**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darryl Glenn MALIN,
Defendant–Appellant.**

No. 89–2227.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1990.

Decided July 19, 1990.

James Porter, Asst. U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Paul M. Storment, Jr., Storment & Read, Belleville, Ill., for defendant-appellant.

Before POSNER and EASTERBROOK, Circuit Judges, and MOODY, District Judge.[*]

MOODY, District Judge.

Defendant–Appellant Darryl Glenn Malin appeals his conviction on one count of possessing marijuana with intent to distribute, 21 U.S.C. § 841, one count of possessing a firearm (felon in possession), 18 U.S.C. § 922, and one count of using or carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924. We affirm.

I.  Background

In October of 1988, Monroe County Sheriff's Deputy Kevin Sweet informed Illinois

[*] The Honorable James T. Moody, Northern District of Indiana, sitting by designation.

State Police Special Agent Kevin Stallard that marijuana was growing in the backyard of Malin's Dupo, Illinois residence. Stallard and Sweet investigated and, from a neighboring yard, observed six cannabis plants. Stallard later swore out a complaint for a search warrant. On the strength of Stallard's complaint, a state court judge issued a warrant to search the house, its curtilage, and adjacent outbuildings. Stallard and other officers executed the warrant and seized four handguns and fifty pounds of marijuana from inside the house.

Before trial, Malin moved to suppress evidence. The Honorable William J. Beatty, Southern District of Illinois, denied the motion, rejecting the argument that probable cause did not support the search of the house. After a three-day trial, a jury found Malin guilty on all counts. Malin presents three issues on appeal. First, he argues that the district court erred in denying his motion to suppress. Second, he argues that the court improperly instructed the jury on the section 924 count. Finally, he argues that the government failed to establish a necessary element of the section 924 offense.

## II. Search Warrant

A reviewing court will uphold a judge's decision to issue a search warrant "so long as the [judge] had a 'substantial basis for ... conclud[ing]' that [the] search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Because the probable cause determination "involves the application of law rather than an evaluation of factual evidence ... on review the appellate court is not limited to a determination of whether the district court's finding was clearly erroneous. [The appellate court] must independently review the sufficiency of the affidavit [supporting the warrant], recognizing that doubtful cases should be resolved in favor of upholding the warrant." *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir.1982) (citations omitted).

Malin argues that Stallard's complaint for a search warrant failed to establish a nexus between the marijuana and the house. Courts have settled that "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 1977, 56 L.Ed.2d 525 (1978). *Accord Gates*, 462 U.S. at 238, 103 S.Ct. at 2332 ("a fair probability that contraband or evidence of a crime will be found in a particular place"). For the search of the house to have been reasonable, then, the complaint must have supported the inference that marijuana or other evidence of marijuana possession would be found there.

In the complaint, Stallard stated:

Pursuant to information received from a neighbor ... [Agent] Stallard proceeded to 336 McBride, Dupo, St. Clair County, Illinois. [Agent] Stallard was permitted to take a position on an adjoining neighbor[']s property and viewed the area of the backyard at 336 McBride. At this time, [Agent] Stallard was able to observe the tops of what he can identify through his experience to be cannabis plants. [Agent] Stallard was able to identify six (6) plants, however from that position, a 6-foot privacy fence blocked any further observation of the backyard. [Agent] Stallard also observed an outbuilding directly adjacent to the cannabis plants, said building was approximately 20' × 30' in size.

Concededly, Stallard's complaint did not directly link the marijuana to the house. Direct evidence, however, is not necessary to a probable cause determination. *See, e.g., United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir.1986). "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not le-

gal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), *quoted in Gates*, 462 U.S. at 231, 103 S.Ct. at 2328. A judge making a probable cause determination "need not determine that the evidence sought is *in fact* on the premises to be searched ... or that the evidence is more likely than not to be found where the search takes place.... [He] need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985) (citations omitted) (emphasis in original). In reaching his conclusion, a judge "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Angulo–Lopez*, 791 F.2d at 1399. *Accord Rambis*, 686 F.2d at 624. In this case, Stallard's observation of marijuana growing in Malin's yard reasonably yielded the conclusion that marijuana or other evidence of marijuana possession would be found in Malin's house. *See United States v. Kimberlin*, 805 F.2d 210, 228 (7th Cir.1986), *cert. denied*, 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987).

Malin makes much of the fact that Stallard's complaint cited no evidence establishing that the marijuana was cultivated (although the marijuana was in fact cultivated). Malin argues that Stallard's failure to cite evidence of cultivation precluded the issuing judge from reasonably inferring that marijuana would be found in the house. We disagree. While evidence of cultivation would have informed the probable cause determination, it was not necessary. Malin implies that an innocent explanation (i.e., that the marijuana grew wild) negated the inference that criminal evidence would be found in the house. To provide probable cause, however, a complaint for a search warrant "need only allege specific facts establishing a reasonable probability that the items sought are likely to be at the location designated; the [complaint] need not also negate every argument that can be asserted against that probability." *United States v. Rambis*, 686 F.2d 620, 623 (7th Cir.1982). *Accord United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985) ("The fact that an innocent explanation may be consistent with the facts alleged ... does not negate probable cause."). Although Stallard's complaint contained less than optimum information, it provided enough for the issuing judge to find probable cause.

██ At worst, this is a "doubtful case" that "should be resolved in favor of upholding the warrant." *Rambis*, 686 F.2d at 622. Moreover, even if we found the warrant invalid, we nevertheless would affirm the district court's decision denying the motion to suppress. Suppression "is not the inevitable consequence of an illegal search." *United States v. Savoca*, 761 F.2d 292, 295 (6th Cir.), *cert. denied*, 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985). Evidence is not suppressed when a police officer relies in objective good faith on a faulty but facially valid search warrant. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Indeed, "[i]t is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination." *Illinois v. Krull*, 480 U.S. 340, 349, 107 S.Ct. 1160, 1167, 94 L.Ed.2d 364 (1987). After obtaining a warrant, "the officer's sole responsibility ... is to carry out the search pursuant to it." *Id.*[1]

In considering the issue of objective good-faith reliance, we ask whether "a reasonably well-trained officer would have known that the search was illegal despite the [judge]'s authorization." *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23.

---

1. The Supreme Court has stated that "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness," *Gates* 462 U.S. at 267, 103 S.Ct. at 2347 *quoted in Leon*, 468 U.S. at 922, 104 S.Ct. at 3420, because "a warrant issued by a magistrate normally suffices to establish" that the officer executing the warrant "acted in good faith in conducting the search." *United States v. Ross*, 456 U.S. 798, 823 n. 32, 102 S.Ct. 2157, 2172 n. 32, 72 L.Ed.2d 572 (1982), *quoted in Leon*, 468 U.S. at 922, 104 S.Ct. at 3420.

Even if we did not believe probable cause existed in this case, we would recognize that a reasonably well-trained officer could have reached the opposite conclusion. The factual gradations in this type of case are often difficult to discern even after a studied examination of the various judicial opinions. Thus, although a reasonably well-trained officer must recognize the general rule which controls the probable cause determination in this case [that a reasonable nexus must exist], we [could not] conclude under the particular facts of this case that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

*Savoca,* 761 F.2d at 298 (quoting *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421) (footnote omitted).

Any weakness in the inferential chain between the marijuana in Malin's yard and evidence in Malin's house was rendered immaterial by Stallard's objectively reasonable reliance on the warrant. *See Kimberlin,* 805 F.2d at 228.

### III. Section 924 Conviction

Malin argues that the district court improperly instructed the jury on the section 924 charge and that the government did not produce evidence sufficient to establish a necessary element of the section 924 offense. At the outset, we note that Malin failed to preserve these arguments in the district court by failing to file a timely motion for a judgment of acquittal or for a new trial. The government, however, waived the issue by not raising it on appeal. We therefore consider Malin's arguments on their merits.

### A. Jury Instructions

Section 924(c)(1) makes it illegal to use or carry a firearm *"during and in relation to* any ... drug trafficking crime." 18 U.S.C. § 924(c)(1) (emphasis added). Congress included the phrase *in relation to* "to allay explicitly the concern that a person could be prosecuted under [the statute] for committing an entirely unrelated crime while in possession of a firearm." *United States v. Stewart,* 779 F.2d 538, 539 (9th Cir.1985). *See* S.Rep. No. 225, 98th Cong., 1st Sess. 312–14 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3490–92. Malin argues that in instructing the jury the district court used the term *during* interchangeably with the phrase *in relation to,* thereby causing the jury to believe that it could convict Malin regardless of whether the government proved a relationship between the guns and the predicate offense. We see no merit in this argument. Although the charges instruction and the original form of verdict employed the term *during* without the phrase *in relation to,*[2] the instructions as a whole were clear and adequate. The district court specifically instructed the jury that to sustain a conviction the government must prove that Malin used or carried a firearm in relation to a drug trafficking offense.[3]

■ We also see no merit in Malin's argument that the district court erred in not

---

**2.** The charges instruction provided that "[t]he defendant is charged with ... Unlawful use or carrying a firearm during a drug trafficking crime," while the original form of verdict stated: "We, the jury, find the defendant guilty of the offense of use or carrying a firearm during a drug trafficking offense."

In response to a note from the jury, the court altered the form of verdict substituting the phrase *in relation to* for the word *during.* Malin argues that this could only have added to the jury's confusion. If anything, correcting the form of verdict underscored the importance of the *in relation to* language.

**3.** The court tendered the following elements instruction:

To sustain the charge of use or carrying a firearm during a drug trafficking offense ...

the government must prove the following propositions:

First: that the defendant did use or carry a firearm;

Second: that he did so *in relation to* a drug trafficking crime, that crime being possession with Intent to Distribute Marihuana.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty. If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

explaining the meaning of the phrase *in relation to*. Malin argues that the court should have given an instruction similar to the one used in *United States v. Brockington*, 849 F.2d 872 (4th Cir.1988). In *Brockington*, the United States Court of Appeals for the Fourth Circuit approved the following instruction:

> [T]he Government must prove beyond a reasonable doubt that the firearm had some relation to or some connection to the underlying crime. A firearm can be used in relation to a felony involving the drug trafficking, if the person possessing it intended to use the gun as a contingency arose, for example, to protect himself or make an escape possible.

*Id.* at 875. We have no quarrel with the *Brockington* decision. The issue in *Brockington*, however, was not whether a district court *must* give an explanatory instruction, but rather whether a district court *may* give one. Although, like the court in *Brockington*, we find no error in giving an explanatory instruction, we find it unnecessary. The phrase *in relation to* speaks for itself; any further explanation is superfluous. The district court therefore did not err in failing to give an explanatory instruction, especially since Malin did not request one.

Taken as a whole, the instructions "treat the issues fairly and adequately." *United States v. Perlaza*, 818 F.2d 1354, 1358 (7th Cir.), *cert. denied*, 484 U.S. 861, 108 S.Ct. 176, 98 L.Ed.2d 130 (1987). Consequently, we will not interfere with them on appeal. *Id.*

### B. Sufficiency of the Evidence

Finally, we turn to Malin's argument that the government failed to produce sufficient evidence to prove that the confiscated firearms were used or carried during and in relation to the drug trafficking crime. In considering this issue, "[w]e must examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences." *United States v. Ocampo*, 890 F.2d 1363, 1370 (7th Cir.1989). We will reverse "only if we find that a reasonable fact-finder could not have found the essential elements of the offense beyond a reasonable doubt." *Id.*

The evidence adduced at trial established that police officers seized four loaded handguns during the search of Malin's house. The officers did not find any of the guns on Malin's person or even within his reach; rather, they found a .380 nine millimeter semi-automatic pistol on the kitchen table, a .357 Smith & Wesson revolver and a Taurus PT99 nine millimeter semi-automatic pistol at the headboard of a bed, and a Tech nine millimeter semi-automatic pistol in a bedroom closet. The "uses or carries" requirement of section 924(c)(1), however, does not require that the weapons must be found on or near the defendant. *United States v. Rosado*, 866 F.2d 967 (7th Cir.1989). Courts routinely uphold convictions in cases, like this one, in which officers find multiple weapons in strategic proximity to large quantities of drugs. *See United States v. Wilson*, 884 F.2d 174 (5th Cir.1989); *United States v. Robinson*, 857 F.2d 1006 (5th Cir.1988); *United States v. Grant*, 545 F.2d 1309 (2d Cir.1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977). In such cases, the circumstances (i.e., the large number of weapons, their strategic location, and the volume of contraband)[4] make reasonable the inference that the weapons were used in relation to the predicate crime. *See Wilson*, 884 F.2d at 177.

In this case, the government produced sufficient evidence to support the finding that Malin "used" the weapons in relation to the drug trafficking offense.[5] The jury

---

4. These circumstances distinguish this case from *United States v. Feliz–Cordero*, 859 F.2d 250 (2d Cir.1988), in which the United States Court of Appeals for the Second Circuit found that the presence of single gun in a dresser drawer was, by itself, insufficient to satisfy section 924(c)(1)'s "uses" provision. *Id.* at 254.

5. This court has held that possession of marijuana with intent to distribute is a drug trafficking offense within the meaning of section 924(c). *See United States v. Nash*, 876 F.2d 1359, 1361–62 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1145, 107 L.Ed.2d 1049 (1990).

reasonably could have inferred from all the evidence that Malin kept the guns in order to protect himself and his marijuana. *See Ocampo*, 890 F.2d at 1371. This is enough to sustain the conviction.

AFFIRMED.

EASTERBROOK, Circuit Judge, with whom POSNER, Circuit Judge, joins, concurring.

Although I join in the court's opinion, it is worth noting the tension between this circuit's rule that probable cause decisions are reviewed *de novo* on appeal and the Supreme Court's treatment of probable cause as a fact-bound judgment call, which implies deferential review. The court employs our circuit's *de novo* approach, see 908 F.2d at 165, citing *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir.1982). Many more are to the same effect. E.g., *United States v. Sophie*, 900 F.2d 1064, 1072 (7th Cir.1990); *United States v. Ingrao*, 897 F.2d 860, 862 (7th Cir.1990) (collecting cases); *United States v. DeSoto*, 885 F.2d 354, 367 (7th Cir.1989); *United States v. Lima*, 819 F.2d 687, 688 (7th Cir.1987). But see *United States v. Fuesting*, 845 F.2d 664, 671–72 (7th Cir.1988) (review for abuse of discretion).

*De novo* appellate review implies that probable cause is a question of "law". Yet *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983), like many other cases, observes that deciding whether there is probable cause requires the application of judgment to the "totality of the circumstances", the opposite of a rule of law. *Gates* continued: "[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id.* at 236, 103 S.Ct. at 2331 (citation omitted). What sense does it make for a district judge to review the magistrate's decision deferentially, but for the court of appeals to engage in *de novo* review?

Reviewing probable cause decisions *de novo* is of a piece with our holding that the

voluntariness of a confession—which like probable cause depends on the totality of the circumstances—also is reviewed *de novo* on appeal. *United States v. Hawkins*, 823 F.2d 1020, 1022 (7th Cir.1987). This rule has been questioned repeatedly by panels of our court, *Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1253–55 (7th Cir.1988) (concurring opinion); *Weidner v. Thieret*, 866 F.2d 958, 960–61 (7th Cir. 1989); *United States v. Rodriguez*, 888 F.2d 519, 522 n. 1 (7th Cir.1989); *Wilson v. O'Leary*, 895 F.2d 378, 383 (7th Cir.1990); *United States v. Rutledge*, 900 F.2d 1127, 1128–29 (7th Cir.1990). I trust it is ripe for reassessment. Likewise with *de novo* review of probable cause. See also *United States v. Maragh*, 894 F.2d 415 (D.C.Cir. 1990), in which Judge Mikva and Edwards debate the question whether the existence of a "seizure" should be determined *de novo* on appeal, a question that has much in common with this one and on which I agree with Judge Mikva that review should be deferential. See also *United States v. Dunigan*, 884 F.2d 1010, 1014 (7th Cir. 1989) (collecting cases).

Just the other day the Supreme Court held that all questions concerning the application of Fed.R.Civ.P. 11—even whether a legal position is "frivolous"—should be reviewed deferentially. *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). See also *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933–35 (7th Cir.1989) (in banc). It did this because questions of characterization under "fact-dependent legal standard[s]", —— U.S. at ——, 110 S.Ct. at 2459, generally ought to be reviewed deferentially. That the subject is a "mixed question of law and fact" does not imply *de novo* review; *Hartmarx* observes that the existence of negligence is subject to a deferential review, although it is such a "mixed" question. *Ibid.* See also *Mucha v. King*, 792 F.2d 602, 605–06 (7th Cir. 1986); *Scandia Down Co. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428–29 (7th Cir.1985). Deferential review is equally appropriate for the existence of probable cause, which depends on a multitude of factors. Multifactor tests do not comprise separable

"questions of law". Rules of law influence the application of the factors, and appellate courts may ensure that district judges understand and apply these rules. But whenever the court must determine "reasonableness" or climb the tiers of a multifactor approach, the result is a gestalt, not a legal conclusion. Little is gained, and much can be lost, by having three judges redo the work of one. After *Hartmarx* and the string of similar cases in recent years, e.g., *Pullman Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982); *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986); *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), we need to curtail the category of subjects on which we claim a right to substitute our judgment for the district judge's.