UNITED STATES of America

v.

Climmie JONES, Jr.

No. 3:96–00017.

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 8, 1996.

David L. Cooper, Goodlettsville, TN, for plaintiff.

Lawrence W. Moon, Nashville, TN, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

### I. *Introduction*

Pending before the Court is the Defendant's Motion To Suppress (Docket No. 94) items seized from his house at 3515 Old Nashville Highway in Murfreesboro, Tennessee; and the Defendant's Motion To Suppress Statements Of Defendant Jones (Docket No. 95). The Court heard evidence on the Motions on September 17, September 20, and September 23, 1996. For the reasons described below, the Motion To Suppress is GRANTED in part and DENIED in part, and the Motion To Suppress Statements Of Defendant Jones is DENIED.

### II. *Suppression of Items Seized From Defendant's Residence*

As a result of several transactions in which the Defendant allegedly sold crack cocaine to a confidential informer, the Murfreesboro Police Department obtained a search warrant for the residence the Defendant shared with his wife, co-Defendant Marian Jones. The warrant listed "cocaine" as the item for which the search would be conducted.

### A. *Scope of the Search Warrant*

Defendant first argues that because several of the items seized were not listed in the search warrant, those items should be excluded from evidence at trial. Resolution of this issue requires application of the Supreme Court's analysis in *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) of whether the Fourth Amendment limits the admissibility of items seized without a warrant and found in plain view.

In *Horton*, a law enforcement officer obtained a warrant to search the defendant's

house only for proceeds of a robbery, even though the affidavit for the search warrant described not only the proceeds, but also the weapons used by the robbers. 496 U.S. at 129–30, 110 S.Ct. at 2304. During the search, the officer did not find the proceeds, but he did find the weapons in ·plain view, and seized them. 496 U.S. at 129–33, 110 S.Ct. at 2304–05. He also seized other items of evidence. *Id.*

The officer testified that although he was searching for the proceeds of the robbery, he was also interested in other evidence that would connect the defendant to the robbery. 496 U.S. at 131–33, 110 S.Ct. at 2305. Therefore, the Court explained, the evidence was not discovered "inadvertently." *Id.*

The Court initially explained that the "plain view" exception to the warrant requirement is an exception "addressed to the concerns that are implicated by seizures rather than searches." 496 U.S. at 133–34, 110 S.Ct. at 2306. The Court then examined its previous decision on the plain view doctrine in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), which limited the plain view doctrine in two ways: (1) law enforcement officers must not have violated the Fourth Amendment in arriving at the place from which the evidence can be plainly viewed; and (2) discovery of the evidence in plain view must be inadvertent. 496 U.S. at 133–38, 110 S.Ct. at 2306–08.

The Court then determined that the second limitation, that the evidence be found "inadvertently," was an unnecessary limitation on the plain view doctrine. 496 U.S. at 136–42, 110 S.Ct. at 2308–10. The interest in· preventing general searches, the Court explained, is already served by requiring that the warrant particularly describe the place to be searched and the items to be seized. 496 U.S. at 138–40, 110 S.Ct. at 2309. The scope of the search in that case, the Court concluded, was not enlarged by the omission of any reference to weapons in the warrant:

'Police with a warrant for a rifle may search only places where rifles might be and must terminate the search once the rifle is found; the inadvertence rule will in no way reduce the number of places into which they may lawfully look.'

496 U.S. at 140–42, 110 S.Ct. at 2310 (quoting Justice White's concurrence and dissent in *Coolidge,* 403 U.S. at 515–18, 91 S.Ct. at 2063).

Finally, the Court noted ·that when the items were seized by the officer in *Horton,* "it was immediately apparent to the officer that they constituted incriminating evidence." *Id.*

■ Therefore, based on *Horton,* law enforcement officers may seize evidence not listed in a search warrant if the following conditions are met: (1) the officer did not violate the Fourth Amendment in arriving at the place where the item is discovered; (2) the item is discovered in a place where the item listed in the warrant could be found; and (3) the incriminating nature of the item is immediately apparent to the officer.

■ Defendant argues that because officers had information, before they obtained the search warrant, that connected the Defendant with several of the items seized, the officers should not be able to rely on the plain view doctrine. In essence, Defendant argues, relying on the dissenting opinion in a case decided before *Horton, Campbell v. Shearer,* 732 F.2d 531, 546 (6th Cir.1984), that discovery of these items was not inadvertent. As discussed above, *Horton* no longer requires that the discovery of items in plain view be inadvertent.[1]

■ The question before the Court, then, is whether the requirements of *Horton* have been met as to all the items seized from Defendant's house.[2] At the hearing, the parties referred to a list of items contained in an "Evidence Seizure" Sheet that was drafted

---

**1.** When asked why they did not list these items in the search warrant, the officers testified that, at least with respect to the weapons seized, they did not believe they had probable cause to obtain a warrant for the weapons because the informant had not seen the Defendant with the weapons.

**2.** The Defendant has not raised a Fourth Amendment objection to the items seized from his person after his arrest.

by one of the officers during the search. A copy of that exhibit is attached to this Order. The Court heard the testimony of the officers who seized the items listed on the sheet. As to all the items listed on the sheet that were found in the Defendant's house, except the ones specifically discussed below, the Court is satisfied that: (1) when he or she found the item, the officer who seized the item was searching in a place where cocaine could have been hidden; (2) the item was found in plain view; and (3) the item was either contraband or the incriminating nature of the item was otherwise immediately apparent to the officer.

Specifically, with respect to the weapons seized, the officer who seized the Remington Shotgun, testified that the gun was lying in plain view on top of a television in the Defendant's bedroom. As to the AR–15 Colt, the officer who seized the gun testified that it was under a couch cushion in the living room. The Court is satisfied that both these items were found in plain view in a place where cocaine could have been hidden, and that both items were evidence of unlawful possession of a weapon by a convicted felon,[3] or of drug trafficking. *See Jennings v. Rees,* 800 F.2d 72, 75 (6th Cir.1986) (weapon could be seized as evidence of either illegal handgun possession or of the crime of drug trafficking); *U.S. v. Weatherspoon,* 82 F.3d 697, 699 (6th Cir.1996).

■ The Court is not persuaded, however, that the incriminating nature of the "13 white tablets" and the "2 tablets" listed on the "Evidence Seizure" Sheet has been established. Neither of the officers who testified about these items explained why they were seized or what they contained. Furthermore, the officers could not state with sufficient certainty exactly where the items were found. Under these circumstances, the Court is of the opinion that these items should be suppressed.

The Court is similarly unpersuaded that the Government has established the incriminating nature of the jewelry, specifically the rings and necklaces, seized from the Defendant's house. Although the Government may take the position that the jewelry served to identify the Defendant or is evidence of drug trafficking, none of the officers testified to that effect. Furthermore, the officer who seized these items also could not state with sufficient certainty exactly where the items were found. Accordingly, these items will also be suppressed.

### B. *Probable Cause*

Defendant next argues that the officers did not have probable cause to believe that the cocaine would be found at the Defendant's house. Defendant relies on the fact that none of the transactions with the confidential informant took place inside the Defendant's house.

■ A valid search warrant may be issued only upon a finding of probable cause, or a "'fair probability' that contraband or other evidence of a crime will be found in the place to be searched." *U.S. v. Berry,* 90 F.3d 148, 153 (6th Cir.1996). This Court is required to uphold the state judge's[4] decision to issue the warrant "so long as the [judge] had a 'substantial basis for ... conclud[ing]' that [the] search would uncover evidence of wrongdoing." *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 270–72, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)).

■ In this case, two of the several transactions that are the subject of the indictment involve the confidential informant's purchase of crack cocaine from the Defendant in a car in the Defendant's driveway. The other transactions took place at another residence and at a convenience store. Defendant argues that because there was no evidence that the Defendant kept cocaine in his house,

---

**3.** Both officers were aware that Defendant had a previous felony conviction.

**4.** Federal law applies to the evaluation of the validity of a search warrant, even if that warrant was issued by a state court judge. *U.S. v. Wright,*

16 F.3d 1429, 1433–37 (6th Cir.1994) (fact that Tennessee law may require greater protection against searches and seizures than federal law "is of no avail to a defendant in federal court, under prosecution for a federal crime.")

there was no probable cause to support a search of the house.

Other courts have found probable cause to exist in similar situations without a showing that all the items to be searched for have actually been seen in the place to be searched. In *U.S. v. Malin*, 908 F.2d 163, 165–66 (7th Cir.1990), the Seventh Circuit held that observation of marijuana growing in a defendant's backyard provided probable cause to believe that marijuana or other evidence of marijuana possession would be found in a search of the defendant's residence. In reaching its decision, the court explained that probable cause is not negated simply because an innocent explanation may be consistent with the facts (e.g., that the marijuana grew wild). *See also U.S. v. Martin*, 920 F.2d 393, 399 (6th Cir.1990).

Furthermore, some courts have explicitly stated that in the case of drug dealers, "evidence is likely to be found where the dealers live." *U.S. v. Lamon*, 930 F.2d 1183, 1188 (7th Cir.1991). *See also U.S. v. Emmons*, 24 F.3d 1210, 1215–16 (10th Cir.1994).

The Court is similarly persuaded in this case that there was probable cause to believe that the Defendant was a drug dealer, based on the information gathered during the two to three month investigation of the Defendant, and that contraband or other evidence would be found in the Defendant's house. Probable cause is not negated simply because no one actually saw the Defendant bring the cocaine out of his house. *U.S. v. Malin, supra.*

Even if the search warrant were issued without the requisite showing of probable cause, however, suppression is not warranted because the searching officers relied on the warrant's validity in good faith. *U.S. v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon*, the Supreme

Court held that the exclusionary rule should not bar admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. at 905, 104 S.Ct. at 3411. Although the *Leon* Court identified four situations in which the exception would not apply,[5] none of those situations are involved here. Accordingly, the search warrant falls within the good faith exception to the exclusionary rule.

### C. Return

Finally, the Defendant argues that the search warrant is defective because it was not returned to the Rutherford County Circuit Clerk's Office as required by Rule 41(d) of the Tennessee Rules of Criminal Procedure. Detective Terry Spence testified, and the warrant indicates, that it was returned to the Judge who issued it.

The Sixth Circuit has held that failure to follow the requirement of Federal Rule of Criminal Procedure 41 regarding inventory of items seized and a prompt return to the court does not require invalidation of an otherwise properly issued and executed search warrant or the suppression of evidence acquired under it. *U.S. v. Dudek*, 530 F.2d 684, 688 (6th Cir.1976). The Court went on to hold that violation of a similarly-worded Ohio rule did not require application of the exclusionary rule, even if the items would have been excluded under Ohio law. 530 F.2d 691.

Accordingly, even if Detective Spence violated Tennessee Rule of Criminal Procedure 41 by returning the warrant to the state court rather than the state court clerk, the violation would not require exclusion of the items seized under the warrant.[6]

In conclusion, the Court will not permit the Government to admit into evidence the "13

**5.** The four situations are: (1) where the affidavit supporting the search warrant contains knowing or reckless falsity; (2) where the issuing magistrate failed to act in a neutral and detached manner; (3) where the support affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' "; and (4) where the warrant is so facially deficient, through, for example, lack of particularity regarding the place to be searched

or the things to be seized, as to negate the possibility of objectively reasonable reliance. *Leon*, 468 U.S. at 923–25, 104 S.Ct. at 3421.

**6.** The Court notes that, unlike Ohio, Tennessee courts do not appear to exclude evidence seized under a warrant that was not properly returned under state law. *See State v. Hilliard*, 906 S.W.2d 466, 468 (Tenn.Crim.App.1995).

white tablets," the "2 tablets," and the jewelry taken from the Defendant's house. All other items seized from the Defendant's house may be admitted into evidence, subject to other evidentiary objections.

### III. *Suppression of Defendant's Pretrial Statements*

Defendant's counsel has identified, and seeks to suppress, seven pretrial statements allegedly made by the Defendant. In its response to the Defendant's Motion, the Government indicates that it seeks to introduce only three of those statements at trial. Accordingly, the Court will not address the admissibility of the other four statements.[7]

### A. *Statements to Sergeant Greg King About the AR–15*

Defendant first objects to the admissibility of a statement he made to Sergeant Greg King of the Rutherford County Sheriff's Department during the search of his residence regarding an AR–15 rifle found under the couch cushion.

Defendant argues that this statement was obtained in violation of his Fifth Amendment rights and should be excluded based on *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* holds that statements made by a defendant during custodial interrogation generally may not be used as evidence at trial unless, prior to the time the statement was made, the defendant was given certain warnings concerning his rights[8], and he thereafter waived those rights. 384 U.S. at 443, 86 S.Ct. at 1612. Volunteered statements, however, are not barred by the Fifth Amendment and their admissibility is not affected by *Miranda*. 384 U.S. at 477–79, 86 S.Ct. at 1630.

Defendant was arrested after local law enforcement officers stopped his vehicle allegedly en route to meet the confidential informer in this case. Sergeant King testified that he gave the Defendant *Miranda* warnings at the scene of the arrest. When asked if he understood, Sergeant King testified, the Defendant nodded his head in response. Sergeant King testified that he did not ask the Defendant any more questions.

After the arrest, the Defendant accompanied the officers to his residence where they executed a search warrant. Sergeant King testified that the Defendant was seated in a chair in the living room as Sergeant King was about to raise the cushions on the couch as part of the search. At that point, Sergeant King testified, the Defendant told him that there was an M–16 under the cushion (apparently referring to the AR–15) and that it was there for home protection.

Defendant argues that this statement may not be admitted because he had not previously waived his *Miranda* rights. Specifically, Defendant argues that when he "nodded" his head after Sergeant King asked if he understood his *Miranda* warnings, he did not make a knowing and intelligent waiver of his *Miranda* rights. Rather, the "nod" of his head was a reaction to an abrasion he sustained to his forehead during the arrest. Defendant also points out that the street where Defendant was arrested and advised of his *Miranda* rights was busy and noisy.

The flaw in the Defendant's argument is that the Government need not demonstrate that the Defendant waived his *Miranda* rights if the statement sought to be introduced was volunteered and not the result of interrogation. The Supreme Court has defined "interrogation" as "any words or actions on the part of the police ... that the

---

7. The statements the Government does not intend to introduce at trial are: (1) the Defendant's statement to Detective Kerry Nelson at the arrest scene regarding how much trouble the Defendant was in; (2) the Defendant's statements to Detective Terry Spence during the search of the Defendant's residence regarding the AR–15 rifle; (3) the Defendant's statements to Detective Spence during the search of the Defendant's residence regarding marijuana; and (4) the Defendant's statements to Detective Spence during the search of Defendant's residence regarding co-

caine. Accordingly, the Government shall not introduce these statements at trial.

8. The defendant must be told that he has "the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630.

police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). *See also U.S. v. Clark,* 982 F.2d 965, 967–68 (6th Cir.1992) (voluntary statements admissible even where no *Miranda* warnings given). There is simply no indication that any questions or statements from the police officers elicited the Defendant's statement about the rifle. Accordingly, the Defendant's Motion to exclude the statement about the rifle from evidence at trial is denied.

### B. *Defendant's Statements to His Wife at His Residence*

■ Defendant objects to the admissibility of statements he made to his wife, while officers were executing the search warrant at his residence, that were overheard by Officer Joanna Medlen. Officer Medlen testified that while she was in the living room with the Defendant and his wife, she heard Mrs. Jones say something to the Defendant, but could not understand what she said. She then heard the Defendant reply that he had been to Donnie Billings' house to pick up cocaine before the police arrested him. The Defendant then, according to Officer Medlen, expressed regret at having involved his wife.

Defendant argues that these statements are inadmissible because they are "fruits" of an illegal search under *Wong Sun v. U.S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The "fruit of the poisonous tree" doctrine bars evidence that is derived from information or items obtained in an illegal search. *Murray v. U.S.,* 487 U.S. 533, 536–38, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988); *U.S. v. Leake,* 95 F.3d 409, 412–13 (6th Cir.1996).

As explained above, however, the search of Defendant's residence was not invalid. Therefore, the statements made during the search may not be excluded based on the invalidity of the search.[9]

Furthermore, the Court notes that these statements were not obtained in violation of the Fifth Amendment because they were not

made in response to police interrogation. There is no indication that the officers at the residence had addressed the Defendant or his wife in any way before the statements were made. Accordingly, the Defendant's Motion to exclude the statements made by the Defendant to his wife is denied.

### C. *Defendant's Statements During Booking on Federal Charges*

■ Defendant was originally charged with drug offenses in state court, and a public defender was appointed to represent him. While the state charges were pending, Mike Woodham of the Drug Enforcement Administration ("DEA"), accompanied by Detective Terry Spence of the Murfreesboro Police Department, traveled to the local facility where the Defendant was incarcerated to arrest him on federal charges and transport him to the federal facility in Nashville.

Agent Woodham testified that prior to leaving the local jail, he gave the Defendant *Miranda* warnings, and that the Defendant nodded in response. Agent Woodham then said "what," and the Defendant nodded a second time. Agent Woodham then asked the Defendant to answer yes or no, and the Defendant said "yeah." Agent Woodham said he did not seek a waiver of *Miranda* rights at that time because he did not intend to question the Defendant.

Agent Woodham testified that during the booking procedure at the DEA Office, Defendant made the following statements: (1) Defendant accused Agent Woodham of violating his oath because he allowed the Defendant to engage in several cocaine transactions before arresting him; (2) Defendant stated that Agent Woodham had made several technical errors; (3) Defendant stated that the language used in the warrant was inaccurate because the Defendant did not sell real crack cocaine; and (4) Defendant explained that real crack cocaine is made with ammonia and is of a higher quality than the "crack" cocaine he sold, which was made with baking soda. Agent Woodham said that he told the

---

9. Although the Court has identified two types of items that are to be excluded from evidence at trial—tablets and jewelry, Defendant has not in-

dicated how the statements he made to his wife are in any way related to these excluded items.

Defendant to advise his attorney if he thought he had a valid defense.

Agent Woodham testified that the Defendant did not ask to consult an attorney until after the booking process was over.

Defendant argues that these statements were obtained in violation of his Sixth Amendment right to counsel. Specifically, Defendant argues that because his right to counsel had attached, Agent Woodham was not allowed to question him.

■ A defendant's invocation of his or her Sixth Amendment right to counsel at an arraignment or similar proceeding prevents further police-initiated interrogation about that offense. *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). Any waivers obtained in violation of this rule are invalid. 475 U.S. at 635–37, 106 S.Ct. at 1411.

As in the Fifth Amendment context, however, this rule is violated only when questioning is initiated by the police. *U.S. v. Mills*, 1 F.3d 414, 417–18 (6th Cir.1993) (No Sixth Amendment violation when defendant approached federal agents after arraignment, in which she had requested counsel, and made incriminating statements about her involvement in the charged offense); *U.S. v. Walls*, 70 F.3d 1323, 1325–26 (D.C.Cir.1995) (Sixth Amendment right to counsel not violated when defendant voluntarily incriminated himself during the booking process). *See also Clark*, 982 F.2d at 967–68 (In Fifth Amendment context, "interrogation" does not include "routine booking questions"). There was no evidence presented at the hearing on the suppression motion indicating that law enforcement officers elicited any of the statements made by the Defendant during the booking process.

Accordingly, the Defendant's Motion to exclude the statements made to Agent Woodham during booking on federal charges is denied.

It is so ORDERED.