**UNITED STATES of America**

v.

**Sally HUGHES, Maria Paradise, Michelle Tynes Rauscher, Thomas Seymour, Luisito Sison, Jan Stakowicz; and Michael Walton.**

No. SCR92–19.

United States District Court, N.D. Indiana, South Bend Division.

May 3, 1993.

Thomas Plouff, South Bend, IN, for plaintiff.

Martin W. Kus, LaPorte, Philip C. Parenti, Chicago, IL, C. Kenneth Wilber, Elkhart, IN, David B. Weisman, Brian May, Deborah G. Dunn, William R. Dunn, David Keckley, South Bend, IN, for defendants.

### *MEMORANDUM AND ORDER*

ALLEN SHARP, Chief Judge.

On June 11, 1992, a Federal Grand Jury sitting in the Northern District of Indiana returned a multi-count indictment against the above captioned defendants. Specifically, the Indictment charges the defendants with violations of 18 U.S.C. Section 1341 (mail fraud), 1343 (wire fraud), and 1365 (consumer prod-

uct tampéring); 21 U.S.C. Section 331 (misbranded products in commerce); and 42 U.S.C. Section 1320a–7b(a) (Medicare fraud) and 1320a–7b(b) (Medicare kickback); and Title 42 U.S.C. Section 408 (illegal use of social security numbers).

Now before the court are various pretrial motions filed by several of the defendants in the above captioned case. The government has filed responses to the motions. At a pretrial hearing on December 16, 1992, many of the issues contained in the motions were argued.

## I. Defendant Walton's Motion to Suppress [1]

Initially, this court notes that there are six separate warrants at issue. Defendant Walton ("Walton") has filed a "Motion to Quash and to Suppress," and asserts that all the warrants lacked any indicia of probable cause. Additionally, Walton maintains that all of the search warrants were facially overbroad and lacked particularity, thereby resulting in a general search. The government has filed a "Government's Preliminary Response To Defendant Walton's Motion to Suppress" in which the government argues that the motion to suppress should be summarily denied and that the defendant has made no showing that would merit an evidentiary hearing.

The warrants at issue are the following and are referred to sequentially as Warrants A through F:

On February 20, 1990, Magistrate Rodovich issued a search warrant filed under Case No. H90–65R for the business premises of Michael Walton located at 6731 Kennedy Avenue, Hammond, Indiana. On February 20, 1990, agents of the Federal Bureau of investigation executed the search warrant and removed numerous items from the premises.

On February 20, 1990, Magistrate Rodovich issued a search warrant filed under Case No. H90–65R for a second floor residential apartment belonging to Michael Walton and located at 6731 Kennedy Avenue, Hammond, Indiana. On or about February 20, 1990, agents of the Federal Bureau of Investiga-

tion executed the search warrant and removed numerous items from Mr. Walton's apartment.

On February 20, 1990, Magistrate Rodovich issued a search warrant filed under Case No. H90–66AR for the Bank of Highland located at 6211 Highway Avenue, Highland, Indiana. On or about February 20, 1990, agents of the Federal Bureau of Investigation executed the search warrant and removed numerous items from safe deposit boxes at that location.

On February 20, 1990, Magistrate Rodovich issued a search warrant filed under Case No. H90–67R for a safe deposit box in the name of Michael Walton located at the Gainer Bank, 169th Street, Hammond, Indiana. On or about February 20, 1990, agents of the Federal Bureau of Investigation executed the search warrant.

On February 21, 1990, Magistrate Rodovich issued a search warrant filed under Case No. H90–70R for safe deposit boxes in the name of Clifton Webb which were located at the Gainer Bank, 169th Street, Hammond, Indiana. On or about February 21, 1990, agents of the Federal Bureau of Investigation executed the search warrant and removed numerous items from the safe deposit boxes.

On August 3, 1990, Magistrate Rodovich issued a search warrant filed under Case No. H90–119R for Michael Walton's residence. On or about August 3, 1990, agents of the Federal Bureau of Investigation executed the search warrant and removed numerous items from Walton's apartment.

### A. Probable Cause

The Fourth Amendment provides:

The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

---

1. This court notes that Walton made a Motion to Strike the Government's Response to the Motion to Suppress as untimely. This court denied that motion at the hearing.

U.S. Const. amend. IV. In his famous treatise on the subject, *Search and Seizure*, the author, Wayne R. LaFave, explained that "[t]he essence of the Fourth Amendment has never been better stated than in the oft-quoted dissent of Justice Brandeis in *Olmstead v. United States*, 277 U.S. 438 [48 S.Ct. 564, 72 L.Ed. 944] (1928):

> The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men."

*Id.* See generally Wayne R. LaFave, *Search and Seizure*.

### 1. Affidavits

■ Initially, Walton lodges a facial attack on the relevant affidavits. Walton asserts that the affidavits used in the probable cause determination were defective. In making this assertion, Walton explains that the affidavits contained no allegations or evidence to validate the various searches premised on the aforementioned criminal statutes. Specifically, Walton maintains the affidavit of Agent Ormsby contains no valid indicia of probable cause, and is only particularized by a general reference to the statutes at issue for the abovementioned crimes.

In opposition to these assertions, the government points out that essentially the same affidavit used in connection with Warrant A (H90–65R) was used to support Warrants B, C, D, and E, and that this warrant was sufficient for purposes of probable cause. The government indicates that FBI Agent Ormsby's affidavit supporting the warrants was based on interviews and investigations stemming from discussions with five individuals who were past and present employees of Walton's. The information provided by these employees established the following: 1.

Walton gave tickets for various entertainment events, as well as other gifts, dinners, and prostitutes, to certain doctors in a *quid pro quo* for the purchase of pacemakers; 2. Walton used various aliases and social security numbers to effectuate this scheme; 3. Walton systematically removed various identifying labeling and markings; 4. Walton removed or altered expiration dates on the pacemakers in order to present a current date. Additionally, the government maintains that the information provided by the witnesses was based on personal knowledge and corroborated by independent investigation. Finally, the government asserts that Agent Ormsby investigated this information and corroborated several facts such as the use of aliases at various banks.

Initially, this court finds Agent Ormsby's reliance on various former and present employees was sufficient for purposes of securing a warrant. Walton suggests that Agent Ormsby's reliance on said employees was insufficient and points to the test enunciated by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Additionally, Walton maintains:

> Viewing the affidavit under the "totality of the circumstances" test leads to the conclusion that no probable cause existed for the issuance of the warrant. The affidavit relies on five unidentified individuals who purportedly worked or previously worked for Walton's companies. There is no information contained in the affidavit that those individuals had provided reliable information in the past and there is no corroboration of the cooperating witnesses' statements.
>
> Most importantly, none of the cooperating witnesses appear to have given the FBI information concerning what evidence was on the premises at the time of the application for the search and seizure warrant. Almost all of the cooperating witnesses' information was concerned with past events and none of the witnesses appear to have given the FBI information concerning evidence which was on the premises at the time they spoke to the FBI.

*Motion to Suppress* at 14.

First, this court finds this assertion to be irreconcilable with the contentions that Wal-

ton makes in another part of their motion. In another argument, Walton contends that Agent Ormsby *could* have made the affidavit in support of the warrant more detailed in description because the employees were *able* to provide reliable information. In fact, Walton points out:

> Certainly one of those five individuals could have assisted Agent Ormsby in narrowing the search. A reasonable investigation by the FBI would certainly have indicated the types of pacemakers which were allegedly being altered, the number of altered pacemakers which were on the premises, the brand names of the altered pacemakers, the location of the altered pacemakers, and the warrant could have been limited to a specific period of time which coincided with the suspect transactions. The warrant authorized the seizure of all pacemakers—not just those suspected to have been tampered with.
>
> Agent Ormsby's affidavit, assuming it could be used to limit the scope of the search, indicates that four (4) months prior to the execution of the search warrant Walton's employees had used steel wool to remove brand names and "other identifying marks" from pacemakers. The FBI, using this information alone, could have narrowed the scope of their search to those pacemakers which had no identifying marks.

*Motion to Suppress* at 9. Walton cannot argue in one instance that the employees could not possibly provide reliable information, and in another instance, propound another argument on the exact opposite assertion. At any rate, to be sure, the underlying logic of this assertion is that the employees referred to in the affidavit were able to supply the information requisite for probable cause.

While the foregoing is a consideration, this court certainly does not base this decision on the semantics of advocacy. Therefore, in light of the caselaw on this subject, this court must find that the affidavits were sufficient on their face for probable cause. In *Gates, supra,* the Supreme Court indicated:

> [T]he task of the issuing magistrate is simply to make a practical, common sense

decision of whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of the person supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place.

*Id.* This court holds that Magistrate Rodovich's probable cause decision is certainly reasonable, especially in light of *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). To be sure, these employees had a "basis of knowledge" and that basis was grounded in "veracity." Here, the other important consideration to the "totality of the circumstances" is the fact that the employees were akin to private citizens and not informants. This adds weight and credibility to the assertions by the employees because reliability can also be premised on the nature of the information, and the corresponding opportunity to see and hear certain incidents. *See, e.g., United States v. Unger,* 469 F.2d 1283 (7th Cir.1972), *cert. denied,* 411 U.S. 920, 93 S.Ct. 1546, 36 L.Ed.2d 313 (1973); *United States v. Decoteau,* 932 F.2d 1205 (7th Cir.1991). Therefore, in light of the foregoing, this court finds that on their face the affidavits at issue supported Magistrate Rodovich's probable cause determination.

## 2. Probable Cause

■ In the Motion to Suppress, Walton asserts that all of the warrants lacked probable cause. Specifically, Walton argues that the affidavits could not validate and support the probable cause requisite for a search of all the locations listed in the abovementioned warrants. Walton makes this assertion for purposes of the warrants issued for the search of the bank deposit boxes, the storage area, and the various aforementioned residences.

In opposition to these assertions, the government points out that essentially the same affidavit used in connection with Warrant A (H90–65R) was used to support Warrants B, C, D, and E, and that this warrant was sufficient for purposes of probable cause. Additionally, the government points out that there was no evidence seized under Warrant

D and that all of the evidence obtained under Warrant C was returned to Walton. Furthermore, at the hearing, the government indicated that it was not offering evidence obtained under Warrant B. In arguing that the warrants were constitutionally valid, the government asserts that the requisite probable cause was effectuated through Walton's use of aliases and offer of gratuities to physicians in conjunction with the sale of medical devices in combination with the information in the affidavits.

Although these arguments are presented in very cogent fashion, this court finds that there was probable cause for the abovementioned warrants. In *United States v. Malin*, 908 F.2d 163 (7th Cir.1990), *cert. denied*, 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990), the Seventh Circuit, speaking through Judge Moody sitting by designation with Judges Posner and Easterbrook, examined and explained certain relevant and important considerations to the machinations of probable cause. The *Malin* court evaluated the probable cause of a warrant issued after two law enforcement agents observed several marijuana plants growing in the backyard of a certain house. On this basis, a state court judge issued a warrant to search the house, it's curtilage, and the adjacent outbuildings. A federal judge denied the motion to suppress and "rejected the argument that probable cause did not support the search of the house." *Id.* at 165.

In evaluating the aforementioned issue, the *Malin* court indicated:

A reviewing court will uphold a judge's decision to issue a search warrant "so long as the [judge] had a 'substantial basis for ... conclud[ing]' that [the] search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Because the probable cause determination "involves the application of law rather than an evaluation of factual evidence ... on review the appellate court is not limited to a determination of whether the district court's finding was clearly erroneous. [The appellate court] must independently review the sufficiency of the affidavit [supporting the warrant], recognizing that doubtful cases should be resolved in favor of upholding the warrant." *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir.1982) (citations omitted).

*Id.*

In *Malin*, in arguing against the issuance of the search warrant, the defendant there asserted that the sighting of the cannabis growing outside the house failed to establish a nexus with the house and several other buildings on the property. Walton argues that the affidavits and probable cause for the abovementioned search warrants failed to establish a nexus between the alleged pacemaker scheme and the residential and bank searches. On this issue, the *Malin* court explained:

Courts have settled that "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436, U.S. 547, 556, 98 S.Ct. 1970, 1977, 56 L.Ed.2d 525 (1978). *Accord Gates*, 462 U.S. at 238, 103 S.Ct. at 2332 ("a fair probability that contraband or evidence of a crime will be found in a particular place"). For the search of the house to have been reasonable, then, the complaint must have supported the inference that marijuana or other evidence of marijuana possession would be found there.

Concededly, [the affidavit(s) and accompanying probable cause] did not directly link the marijuana to the house. Direct evidence, however, is not necessary to a probable cause determination. *See, e.g.*, *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir.1986). "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), quoted in

*Gates,* 462 U.S. at 231, 103 S.Ct. at 2328. A judge making a probable cause determination "need not determine that the evidence sought is in fact on the premises to be searched ... or that the evidence is more likely than not to be found where the search takes place ... [He] need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Peacock,* 761 F.2d 1313, 1315 (9th Cir.), *cert. denied,* 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985) (citations omitted) (emphasis in original). In reaching his conclusion, a judge "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Angulo–Lopez,* 791 F.2d at 1399. *Accord Rambis,* 686 F.2d at 624. In this case, [the police officer's] observation of marijuana growing in Malin's yard reasonably yielded the conclusion that marijuana or other evidence of marijuana possession would be found in Malin's house. *See United States v. Kimberlin,* 805 F.2d 210, 228 (7th Cir.1986), *cert. denied,* 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987).

In light of the discussion in *Malin,* this court finds that Walton's abovementioned assertions are not viable. First, there was direct evidence connecting the various premises at issue to the alleged fraudulent pacemaker scheme. Nevertheless the *Malin* court explained that circumstantial evidence is operative for determinations of probable cause if it is possible to conclude that it would be reasonable to seek the evidence in the location at issue. Most importantly, a judge "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Malin, supra,* (quoting *Angulo–Lopez,* 791 F.2d at 1399). It is certainly not beyond the pale to infer that the evidence to support a concededly complicated and detail-oriented crime as that alleged in the indictment provides the nexus between the fraudulent pacemaker scheme and the search of the bank and residences here.

### 3. A Reviewing Court Should Review a Magistrate's Determination Deferentially

For purposes of all the abovementioned warrants and the accompanying finding of probable cause based on the affidavits, it is important to note that in *United States v. Spears,* 965 F.2d 262, 269 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992), the Seventh Circuit, speaking through Chief Judge Bauer, explained the role of the reviewing court in the reevaluation of the probable cause decision:

> And finally, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a set of legal rules." *Id. Gates* instructed reviewing courts on the form that review of a magistrate's probable cause determination should take, and we can have no clearer mandate: "we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit [establishing probable cause] should not take the form of de novo review." *Id.* 462 U.S. at 236, 103 S.Ct. at 2331 (emphasis ours). Instead, a reviewing court should review the magistrate's determination deferentially. *Id.* at 238–39, 103 S.Ct. at 2332–33.

*Id.*

■ Magistrate Rodovich concluded that each of these warrants was issued based upon sufficient probable cause. That decision should be given substantial deference by this reviewing court. As the Seventh Circuit recently stated, a magistrate's determination of probable cause is only "subject to review for clear error." *Id.* Therefore, this court notes that the magistrate could justifiably have found that the facts adduced in the four corners of the affidavit could support the requisite probable cause.

### 4. *United States v. Leon*

■ Finally, this court's decisions on the issues surrounding the affidavits and probable cause can be grounded in the well-established mandate enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). More importantly, in all of the abovementioned situations, it should be pointed out that the Supreme Court's

opinion in *Leon* is dispositive. In *Leon*, the Court explained that the Fourth Amendment exclusionary rule would no longer be contravened when a warrant is subsequently found to be invalid if the executing officers acted in good faith and in reasonable reliance on the warrant. Specifically, the *Leon* Court implemented a "good faith" exception in order to admit evidence from a search warrant subsequently invalidated by a lack of probable cause. Of course, *Leon* does not mean that evidence obtained under an invalid warrant should never be suppressed. "The court mandated that the exclusionary rule be invoked only in those 'unusual' cases in which its purposes would be served, i.e., in which it would deter police misconduct." *United States v. Medlin*, 798 F.2d 407, 409 (10th Cir.1986).

In *Leon*, the Supreme Court identified certain circumstances where suppression remains an appropriate remedy:

> The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause' as to render official belief in the existence entirely unreasonable." ... Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Id.* Here, the court finds that none of the aforementioned factors are operative and therefore, the Court's mandate in *Leon* must be applied.

This court also notes that in one of the plethora of *Leon* applications in this circuit, the Seventh Circuit in *United States v. Malin, supra,* explained:

> At worst, this is a "doubtful case" that "should be resolved in favor of upholding

the warrant." *Rambis*, 686 F.2d at 622. Moreover, even if we found the warrant invalid, we nevertheless would affirm the district court's decision denying the motion to suppress. Suppression "is not the inevitable consequence of an illegal search." *United States v. Savoca*, 761 F.2d 292, 295 (6th Cir.) *cert. denied*, 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985). Evidence is not suppressed when a police officer relies in objective good faith on a faulty but facially valid search warrant. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Indeed, "[i]t is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination." *Illinois v. Krull*, 480 U.S. 340, 349, 107 S.Ct. 1160, 1167, 94 L.Ed.2d 364 (1987). After obtaining a warrant, "the officer's sole responsibility ... is to carry out the search pursuant to it." *Id.*

In considering the issue of objective good-faith reliance, we ask whether "a reasonably well-trained officer would have known that the search was illegal despite the [judge]'s authorization." *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23. Even if we did not believe probable cause existed in this case, we would recognize:

> that a reasonably well-trained officer could have reached the opposite conclusion. The factual gradations in this type of case are often difficult to discern even after a studied examination of the various judicial opinions. Thus, although a reasonably well-trained officer. must recognize the general rule which controls the probable cause determination in this case [that a reasonable nexus must exist], we [could not] conclude under the particular facts of this case that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

*Savoca*, 761 F.2d at 298 (quoting *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421) (footnote omitted).

*Id.*

This court has no doubt that the complexity of the alleged crime and the effectuated

search were conducted according to the applicable judicial mandates. Furthermore, the agents conducting the search could not have concluded this situation "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* Therefore, this court holds that assuming *arguendo* that there were deficiencies in the search warrants, the *Leon* decision bars any exclusion of any evidence obtained in the corresponding searches. It is also the view here that the same result can be reached without reference to *Leon.*

## B. Particularity Requirement

Walton asserts that the particularity requirement of the Fourth Amendment is violated in the abovementioned warrants. First, Walton argues that the search warrants lacked sufficient particularity. Second, Walton argues the integrally related supposition that the warrants were overbroad and as a result contained no limiting language. In support of this assertion, Walton indicates that the sundry listing and related documents had to relate to "evidence, fruits and instrumentalities of crime relating to violations of 18 U.S.C. Section 1341 (mail fraud), 1343 (wire fraud), and 1365 (consumer product tampering); 21 U.S.C. Section 331 (misbranded products in commerce); and 42 U.S.C. Section 1320a–7b(a) (Medicare fraud) and 1320a–7b(b) (Medicare kickback); and Title 42 U.S.C. Section 408(g) [408] (illegal use of social security numbers) ..." Therefore, Walton asserts that there were not any real limitations at all and the result was a general search of Walton's offices.

In response, the government maintains that the language of the warrant was mandated by the crimes alleged in the Indictment. Furthermore, the government asserts that the caselaw illustrates situations where courts have upheld warrants containing language less particular than the language used in the warrants at issue here. On this issue, the government also argues that not all items are necessarily suppressed where a warrant is overly broad. In fact, the government contends that only items seized under the overly broad portion of the warrant would be suppressed and there would be no suppression of items seized under the specific portions of the warrant. Finally, it is the government's position that the defendant should not be granted an evidentiary hearing in order to show that the warrants could have been more specific.

The Fourth Amendment requires that warrants "particularly describ[e] ... the person or things to be seized." U.S. Const. amend. IV. The particularity requirement "was a direct response to the evil of the general warrant, one of the abuses by the Crown that led to the American revolution." *United States v. Shoffner,* 826 F.2d 619, 630 (7th Cir.1987), *cert. denied sub nom.,* 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987). This requirement prevents a "general, exploratory rummaging in a person's belongings", *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) and " 'makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another.' " *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965) (quoting *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927)). By limiting searches "to the specific areas and things for which there is probable cause to search, the requirement insures that the search will be carefully tailored to its justifications, and will not take on the character of the wide ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987).

### 1. Particularity

■ Initially, Walton argues that the warrants lacked sufficient particularity. More specifically, Walton argues that the particularity provision is applied in a more stringent fashion when a search warrant involves business records and documents. This court notes that the language in the warrants is rather expansive. The government also concedes this observation. In light of the complexity of the alleged crimes, this court holds that the search warrants were sufficiently particular.

On the issue of particularity, in *United States v. Shoffner,* 826 F.2d 619 (7th Cir.),

*cert. denied sub nom.,* 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987), the Seventh Circuit, speaking through Judge Eschbach, examined *inter alia* the allegation that a warrant was not sufficiently particular. In *Shoffner,* the warrant used the following language:

> Stolen motor vehicles, parts of stolen motor vehicles, materials used to retag, dismantle and rebuild stolen motor vehicles and documentation concerning the · purchase, sale, ownership, titling and licensing of stolen motor vehicles.

*Id.* at 630. In affirming the trial court's decisions denying the defendant's motion to suppress, the *Shoffner* court stated:

> Thus, "[a] search warrant must describe the objects of the search with reasonable specificity, but need not be elaborately detailed." Nor must the warrant "enable authorities 'to minutely identify every item for which they are searching.'" "Thus a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit."

*Id.* This court finds the assertion in *Shoffner* wherein the court noted that "a more particular description could preclude effective investigation of the crimes at issue" to be especially persuasive. *Id.* at 631.

On the issue of particularity with regard to business records and documents, in *United States v. Bentley,* 825 F.2d 1104 (7th Cir. 1987), *cert. denied,* 484 U.S. 901, 108 S.Ct. 240, 98 L.Ed.2d 198 (1987), the Seventh Circuit, speaking through Judge Easterbrook, thoroughly and cogently evaluated this same issue in the context of a fraudulent business engaged in illegal futures market transaction:

> This is the rare case in which even a warrant stating "take every piece of paper related to the business" would have been sufficient. Universal was fraudulent through and through. Every transaction was potential evidence of that fraud.... When the whole business is a fraud, the warrant properly may permit the seizure of everything the agents find. The Constitution requires that the warrant "particularly describe" the things to be sought and seized, but when there is probable cause to seize very business paper on the premises, a warrant saying "seize every business paper" particularly describes the things to be searched for and seized.

> This does not mean that warrants may use open-ended descriptions. The description must be as particular as the circumstances reasonably permit. So if the fraud infects only one part of the business, the warrant must be solely limited—but within that portion of the business "all records" may be the most accurate and detailed description possible. How detailed the warrant must be follows directly from the nature of the items there is probable cause to seize; detail is necessary only to the extent the judicial officer must limit the search and seizure to those items. When there is probable cause to seize all, the warrant may be broad because it is unnecessary to distinguish things that may be taken from those that must be left undisturbed. A generic description adequately defines the officers' authority. When the probable cause covers fewer documents in a system of files, the warrant must be more confined and tell the officers how to separate the documents to be seized from others. The fourth amendment bans exploratory rummaging (which diminishes privacy) and excessive seizures (which interfere with property). A warrant authorizing the seizure of truckloads of documents, all on probable cause, offends neither rule. "Take every business document in Room 201" may be perfectly detailed in the circumstances. A criminal venture does not get extra protection by being large, generating extra paper. Because the agents had probable cause to believe that all of Universal's business records were evidence of crime, the warrant could authorize their capture.

*Id.*

If the pacemaker scheme is operated as the government has described, then fraud permeates the entire enterprise. In order to search an organization riddled with the alleged fraudulent actions and machinations as outlined by the government, a warrant of such ilk would be required to ascertain the full length and breadth of the alleged crimi-

nal activity. Therefore, this court holds that the warrants were sufficiently particular.

## 2. Overbreadth

■ Next, insofar as the only limitations in the warrants are the various criminal statutes, Walton contends that the warrants are overbroad. On the issue of whether a warrant can be properly limited by reference to various criminal statutes, in *United States v. Peters*, 791 F.2d 1270, 1279 n. 4 (7th Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986), the Seventh Circuit, speaking through Judge Wood, found a warrant sufficiently particular where it stated certain items and used the qualifying language of "any and all other material evidence of violations of [five different criminal statutes]." [2]

In so doing, the *Peters* court indicated:

The Supreme Court addressed a similar argument in *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). The warrants in *Andresen* were allegedly rendered overbroad by the presence in each warrant of the phrase "together with other fruits, instrumentalities and evidence of crime at this time unknown" at the end of a long list of documents. The Court rejected the overbreadth argument and held that the "Clauses in the series are limited by what precedes that colon ... The warrants, accordingly, did not authorize the executing officers to conduct a search for evidence of other crimes but only to search for and seize evidence relevant to the crime of false pretenses." 427 U.S. at 481–82, 96 S.Ct. at 2749.

*Id.* at 1278. Therefore, this court holds that the warrants were not overbroad.

While Walton has made a very cogent argument on this issue, this court finds that the warrant is sufficiently detailed for two additional reasons more grounded in the polemics of law enforcement. First, to the investigating officers, it would have certainly been difficult to distinguish between the altered pacemakers and the unadulterated pacemakers. Undoubtedly, there was some intermingling of the pacemakers and the accompanying documentation and business records. Therefore, this court deems that it would be impossible to have conducted the search under more particular auspices. The business records and documentation in the alleged criminal scheme also militates against specificity insofar as it would not be readily apparent to the investigating officers which documents were legitimate and which were those used to effectuate the alleged crimes. Second and conversely, if those executing the search were to conduct the search of the entire premises, taking the time to ascertain which pacemakers and accompanying documents and business records were part of the alleged criminal activity, and which were not, the search could have lasted several days. The underlying supposition is that a wholesale seizure of all property of a certain ilk for subsequent filtering and classification elsewhere is less intrusive and more feasible than an extended police presence for a substantial period of time upon the premises searched.

■ In light of the foregoing and the holdings in *Bentley, supra, Shoffner, supra,* and *Peters, supra,* this court finds that the warrants were sufficiently particular and not overbroad. More importantly, in *Massachusetts v. Sheppard,* 468 U.S. 981, 988, 104 S.Ct. 3424, 3427, 82 L.Ed.2d 737 (1984), the Supreme Court held that the *Leon, supra,* exception could also be applied to warrants that violate the Fourth Amendment's particularity requirement. Therefore, assuming

---

**2.** This court also notes that in *Spears, supra,* the Seventh Circuit, speaking through Chief Judge Bauer, indicated:

He maintains the warrant's language is open-ended and, therefore, prohibited by the Fourth Amendment's guarantee against unreasonable searches and seizures proscribes general or open-ended warrants. *United States v. Brown,* 832 F.2d 991, 996 (7th Cir.1987), *cert. denied,* 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 243

(1988) (citing *Dalia v. United States,* 441 U.S. 238, 255, 99 S.Ct. 1682, 1692, 60 L.Ed.2d 177 (1979)). The officers executing the warrant must be able to identify the things to be seized with reasonable certainty. *Id.* A catch-all phrase will not invalidate a warrant "as long as it sufficiently limits the discretion of the officers in executing the warrant." *Id.*

*Id.*

*arguendo* that this court had found the warrants lacking in particularity and overbroad in scope, the *Leon* good-faith finding enunciated in this court's discussion of probable cause would apply to the discussion of particularity.[3]

Therefore, this court holds that the warrants were sufficiently particular, not overbroad, and did not result in a general search. Finally, this court notes that in order to obtain a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a defendant must make a very specific showing. There are numerous cases that hold a *Franks* hearing is not required unless the defendant makes a "substantial preliminary showing". *E.g. United States v. Reed*, 726 F.2d 339, 341 (7th Cir.1984). There is no need for a hearing to be conducted pursuant to *Franks*. This was in fact conceded by both sides at the hearing. Therefore, the Motion to Suppress is **DENIED**.

## II. Defendant Seymour's Motion to Dismiss Count 1 of the Indictment

■ Defendant Seymour ("Seymour") has made a motion to dismiss count 1 of the Indictment. Count 1 of the Indictment charges Seymour with conspiring to tamper with and relabel implantable devices in violation of 18 U.S.C. § 1365(a) and (e). This action is premised upon Rule 7(c)(1) of the Federal Rules of Criminal Procedure, which states an indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. In so doing, Seymour relies on *United States v. Cruikshank*, 92 U.S. 542, 23 L.Ed. 588 (1875), and maintains that the Indictment contains conclusions of law and facts insufficient to prove the alleged offense. *Cruikshank* was basically in the context of state action as a requirement for a federal criminal indictment under the Fourteenth Amendment and is of no help to this defendant. This court finds that the Indictment is proper. The charge is sufficiently detailed and outlines the elements of the crime alleged in the aforementioned court. Additionally, it "permits the accused to plead and prepare a defense, and allows the disposition to be used as a bar in a subsequent prosecution." *Fawcett v. Bablitch*, 962 F.2d 617 (7th Cir.1992). Although valiantly asserted, the court holds that this motion is **DENIED**.

## III. Defendants Seymour and Rauscher's Motion to Dismiss Count 7 of the Indictment

### 1. Motion to Dismiss

■ Defendants Seymour and Rauscher ("Rauscher") have made a motion to dismiss count 7 of the Indictment on the basis of *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Seymour, pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure, and in support of his motion to dismiss count 7 of the Indictment states the following: count 7 of the Indictment charges the defendants with a three-pronged conspiracy: (1) to defraud the Food and Drug Administration ("FDA") by impeding, impairing, obstructing and defeating its lawful governmental functions; (2) to unlawfully offer and pay gratuities to physicians in connection with the sale of medical devices; (3) to use the United States mails in furtherance of a scheme to defraud, all in violation to Title 18, United States Code, Section 371. Essentially, Seymour and Rauscher maintain that the each offense is separate and distinct from the others and, therefore, should have been charged as a separate conspiracy.

In response the government filed "Government's Response To Defendant Seymour's Motion To Dismiss Count 7 Of The Indictment And Defendant Rauscher's Motion to Dismiss." The Defendants Seymour and Rauscher are charged in count 7 with conspiracy to commit mail fraud, offer gratuities

---

**3.** It should also be pointed out that not all items get suppressed where a warrant is overly broad. In fact, only items seized under the overly broad portion of the warrant would be suppressed and there would be no suppression of items seized under the specific portions of the warrant. *United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984) (where agents execute a search warrant and unlawfully seize certain evidence, the evidence lawfully seized will not be suppressed). *See Waller v. Georgia*, 467 U.S. 39, 44, n. 3, 104 S.Ct. 2210, 2214, n. 3, 81 L.Ed.2d 31 (1984) (where only some evidence seized unlawfully, the lawfully seized evidence not suppressed).

to physicians, and defraud the Food and Drug Administration and, therefore, the government contends that the Defendants' conduct constituted one conspiracy with many objectives, and, as such, did not violate the rule of duplicity

■ To be sure, *it behoves the defense to contest* the issue of whether a count in an Indictment alleges a single conspiracy or a multiple conspiracy. The ramifications of this issue are enormous. First, "alleging a single conspiracy enables the government to join a group of defendants together for trial, and joint trials almost always prejudice the rights of individual defendants to some degree." *United States v. Townsend,* 924 F.2d 1385 (7th Cir.1991). Clearly, "[s]ome trade-off between prejudice and efficiency is, of course, necessary for the judicial system to function; otherwise 'the slow pace of our court system would go from a crawl to paralysis.'" *Id.* at 1388, citing *United States v. Walters,* 913 F.2d 388, 393 (7th Cir.1990). "Nevertheless, defendants are tried together only in cases where the prejudice to the defendant does not deprive him of a fundamentally fair trial and where a joint trial contributes significantly to the efficiency of the judicial system." *Id.* The government also may invoke the coconspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E), to admit evidence against defendants that would otherwise be inadmissible. Finally, as outlined in *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), coconspirators are culpable for the substantive crimes committed by members of the conspiracy that are in furtherance of the conspiracy. *Id. See also Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

To be sure, the aforementioned reasons contributed to the assertion by Learned Hand that the conspiracy charge is the "darling of the modern prosecutor ..." *Harrison v. United States,* 7 F.2d 259, 263 (2d Cir. 1925). Here, the gist of the defendants' objection is that count 7 is not a single conspiracy with several offenses, rather count 7 contains multiple conspiracies. Furthermore, the defendants maintain that there is a spillover effect from the several conspiracies

in count 7. Both the aforementioned defendants point to *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), to support the dismissal of count 7, wherein Justice Jackson explained:

> Obviously the burden of defense to a defendant, connected with one or a few of so many distinct transactions, is vastly different not only in preparation for trial, but also in looking out for and securing safeguard against evidence affecting other defendants, to prevent its transference as "harmless error" or by psychological effect, in spite of instructions for keeping separate transactions separate.

*Id.* at 766–67, 66 S.Ct. at 1249.

■ The government maintains that count 7 alleges a single conspiracy with multiple illegal objectives and relies on the Supreme Court decision in *Braverman v. United States,* 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942). In *Braverman,* the Court, speaking through Chief Justice Stone, noted that "the allegation in a single count of a conspiracy to commit several crimes is not duplicitous." *Id.* at 54, 63 S.Ct. at 102. A single agreement to commit several illegal acts should normally be charged as a single conspiracy. *United States v. Marren,* 890 F.2d 924, 936 (7th Cir.1989). The government alleges that the indictment also alleges that each of the defendants was a member of the conspiracy. Therefore, the indictment is sufficient on its face.

Initially, this court notes that the Seventh Circuit in *United States v. Bruun,* 809 F.2d 397 (7th Cir.1987), confronted this issue within the context of transportation of stolen securities, misapplication of moneys, funds, and credits of a federally insured bank, and making false entries into the books, reports, or statements of such a bank. *Id.* at 400. On this issue, the *Bruun* court, speaking through Judge Eschbach, explained "there was in fact a single conspiracy" with the objective being the defrauding of the bank. The *Bruun* court further explains:

> The gist of a conspiracy is an agreement among the conspirators to commit an offense, attended by an act of one or more of them to effect the object of the conspiracy. The scope of the agreement determines

the scope of the conspiracy, and there may be a single conspiracy even though the commission of two or more offenses is contemplated. The allegation in a single count of a conspiracy to commit several crimes is not duplicitous.

*Id.* at 405–06. (citations omitted). Finally, "it is not necessary for each coconspirator even to agree or actually participate in every step of the conspiracy." *United States v. Spudic,* 795 F.2d 1334, 1337 (7th Cir.1986) (citations omitted).

■■■ In light of the aforementioned discussion and the fact that "[p]roper joinder is determined from the face of the indictment," this court finds that count 7 is not duplicitous and properly joins three offenses into a conspiracy Count. *Id.* Insofar as Seymour argues that count 7 should be divided into three unrelated conspiracies, this court notes that the existence of a single conspiracy is a question of fact for a jury. *United States v. Sababu,* 891 F.2d 1308, 1322 (7th Cir.1989). While this court is inclined to deny this motion on this date, this court should forewarn the government that it could certainly revisit this issue, for example, if there is a variance between the indictment and proof. Therefore, some of the arguments subsumed in this issue are not properly raised at this time and the Indictment sufficiently alleges the defendants' involvement in the conspiracy. There are important practical lessons to be learned from *United States v. Dennis,* 917 F.2d 1031 (7th Cir.1990). Hopefully both court and counsel have learned therefrom.

### 2. Rauscher's Motion for Severance

■■■ Defendant Rauscher moved for severance in addition to the abovementioned motion to dismiss. Under Federal Rule of Criminal Procedure 14, courts are authorized to grant a severance of defendants if a joint trial would be prejudicial. *United States v. Chapman,* 954 F.2d 1352, 1359 (7th Cir.1992). However, a joint trial of co-conspirators is "presumptively appropriate," and a district court's ruling on a Rule 14 severance motion will be overturned only upon a showing of abuse of discretion. *Id.* at 1359 (citing *United States v. Bond,* 847 F.2d 1233, 1240 (7th Cir.1988)). *See also United States v. Moya–*

*Gomez,* 860 F.2d 706, 754 (7th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United States v. Caliendo,* 910 F.2d 429 (7th Cir.1990). Moreover, because the balancing of the cost of conducting separate trials and the possible prejudice inherent in a single trial is best conducted by the trial court, the defendant bears an extremely difficult burden of showing on appeal that the district court abused its discretion. *Moya–Gomez,* 860 F.2d at 754. In order to appeal successfully the denial of a severance motion, a defendant must establish actual prejudice resulting from the denial. *United States v. Peters,* 791 F.2d 1270, 1301 (7th Cir.), *cert. denied,* 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986). Actual prejudice means that the defendant could not have a fair trial without severance, ' "not merely that a separate trial would offer him a better chance of acquittal." ' *Id.* (quoting *United States v. Papia,* 560 F.2d 827, 836 (7th Cir. 1977)).

The general rule in this circuit is that "persons jointly indicted should be tried together, ... particularly when the indictment charges a conspiracy or crime which may be proved against all the defendants by the same evidence and which results in the same or a similar series of acts." *United States v. Echeles,* 352 F.2d 892, 896 (7th Cir.1965). The rationale supporting this general rule was summarized in *United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987), where the court stated:

> There is a strong interest in joint trials of those who engaged in a criminal enterprise. Joint trials reduce the expenditure of judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses, who need not return to court for additional trials; they reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague, even though one or the other (or both) undoubtedly committed a crime. A joint trial gives the jury the best perspective on all the evidence and therefore increases the likelihood of a correct outcome.

*Id.*

■■■ However, notwithstanding the desirability of a single, joint trial, from the point

of view of efficient and expeditious criminal adjudication, said single, joint trial, may not be had at the expense of a defendant's right to a fundamentally fair trial. *United States v. Echeles*, 352 F.2d at 896.

Therefore, the court concludes that defendant Rauscher's motion for severance should be, and hereby is, DENIED. Such result is well supported by the law in this circuit. The government should be warned, however, that this court will apply *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), strictly as the *United States v. Cook*, 530 F.2d 145 (7th Cir.1976), decision well illustrates. Furthermore, the government may *not* rely on any redaction to save itself from the hard edges of *Bruton*. Therefore, based on the abovementioned discussion, this court denies the motion for severance. This court also concludes that the motion to dismiss Count 7 is DENIED.

## IV. Motions to Dismiss or to Compel Election of Counts

▬ Initially, this court notes that Defendant Seymour presents a motion to compel election of counts pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure. This motion contends that count 1 and count 7 of this Indictment allege the same purpose and some of the same overt acts to establish the requisite elements of each conspiracy. Therefore, insofar as count 1 is the same conduct charged a second time as count 7, Seymour contends that the counts are multiplicitous and violate the Double Jeopardy Clause of the Fifth Amendment.

▬ The Double Jeopardy Clause of the Fifth Amendment of the Constitution of the United States has been made applicable to the states through the Fourteenth Amendment. Sixty years ago, the Supreme Court of the United States established in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the threshold inquiry for purposes of Double Jeopardy. In *Blockburger*, the Court explained that conduct which violates more than one statute necessitates the question whether each statute requires proof of an additional fact which the other one does not. This requires an examination of the statutes involved, the

charges involved, and the evidence. The Seventh Circuit authority is in the same vein. For example, see *United States v. Howard*, 774 F.2d 838, 841 (7th Cir.1985); *United States v. Aleman*, 609 F.2d 298, 306–307 (7th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); and Judge Marshall's excellent analysis in *United States v. Dorfman*, 532 F.Supp. 1118 (N.D.Ill.1981). *See also United States v. Bailin*, 977 F.2d 270 (7th Cir.1992). Among the basic purposes of the Double Jeopardy Clause is to protect against a second prosecution for the same offense after acquittal, or a second prosecution for the same offense after conviction. In other words, it protects against multiple punishments for the same offense as the Supreme Court outlined in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). For a more recent explication of those values, see *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), and *Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). For an elaborate discussion of some of the provisions of the Double Jeopardy Clause, see this court's opinion in *United States v. Crumpler*, 636 F.Supp. 396 (N.D.Ind.1986).

The Seventh Circuit in *United States v. Marren*, 890 F.2d 924 (7th Cir.1989), examined the parameters central to the dispute at issue here:

> In general, an agreement to commit several unlawful acts must be charged as a single conspiracy. *Braverman v. United States*, 317, U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942). An exception, however, exists where congress has manifested an intent to authorize multiple punishments for conduct that violates two statutory provisions *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). When such legislative intent is not readily discernible, courts use the test established by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether Congress intended to autho-

rize multiple punishments. *United States v. Jones,* 808 F.2d 561 (7th Cir.1986). Under *Blockburger,* two offenses are considered separately punishable if each statutory provision requires proof of a fact that the other does not. *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182; *United States v. Patterson,* 782 F.2d 68, 72 (7th Cir.1986); *United States v. Dunigan,* 884 F.2d 1010, 1013 (7th Cir.1989).

*Id.*

This court will not reach this issue on this date. Most recently, the Seventh Circuit, speaking through Judge Posner, indicated that the United States Attorney has enormous and detailed control over the trial of a multi-count indictment, unless, of course, motions to dismiss parts thereof are granted by a district court. *United States v. Giannattasio,* 979 F.2d 98 (7th Cir.1992). Here, this court, at this time, will not attempt to pick and choose the counts of this Indictment which will go to trial. They all will. As that process advances, this court will deal with all relevant issues including the abovementioned Double Jeopardy issues. However, that clause of the Fifth Amendment cannot be used at this time to blunt, at the outset, the commencement of a trial. The court must await a hearing of the evidence in order to ascertain whether different proof can be offered on each count to avoid a preliminary application of the Double Jeopardy Clause of the Fifth Amendment. This motion is; therefore, DENIED with leave to renew the same at an appropriate time in the future.

## V. The Remaining Motions

There are a few motions that do not require serious elaboration at this time. The motion for a Bill of Particulars is DENIED for the simple reason that the trial date is set for June 1, 1993 and there are still several months that can be dedicated to discovery. There has been or will be wide discovery. The court indicated in the pretrial hearing that the advice-of-counsel defense has not been foreclosed. Certainly, the government must comply with the standard motions including, but not limited to the mandates of *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), *Brady v.*

*Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The government must also comply with the Jencks Act, 18 U.S.C. § 3500 at the earliest possible time. The government must also file a proffer as required in *Shoffner, supra,* and *Bourjaily, supra.*

The prosecution and defense must be ready to proceed with the trial of this case in South Bend, Indiana on June 1, 1993. General trial procedures will be discussed in more detail as the date approaches. IT IS SO ORDERED.